## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| DONNA DROWN, an individual<br><br>Plaintiff,<br><br>v.<br><br>UTAH STATE OFFICE OF EDUCATION, BENJAMIN RASMUSSEN, MURRAY CITY SCHOOL DISTRICT, and STEVEN HIRASE,<br><br>Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 2:16-cv-01273-DB-PMW<br><br>District Judge Dee Benson<br><br>Chief Magistrate Judge Paul M. Warner |

District Judge Dee Benson referred this case to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Before the court is Defendants the Utah State Office of Education's[2] (the "Board") and Benjamin Rasmussen's ("Mr. Rasmussen") (collectively the "State Defendants") Motion for Judgment on the Pleadings and Motion to Dismiss (the "Motion").[3] The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the Motion on the basis of the written memoranda. *See* DUCivR 7-1(f).

---

[1] *See* docket no. 24.
[2] The State Office of Education is a colloquialism for the Utah State Board of Education.
[3] *See* docket no. 19.

## BACKGROUND

On December 21, 2016, Plaintiff Donna Drown ("Ms. Drown") filed the above-captioned lawsuit.[4] The action arises out of allegations that Ms. Drown was discriminated against by the State Defendants because a letter of reprimand was placed in her teacher licensing file, and her file was "tagged," following an investigation by the Board.[5] The investigation was the result of a complaint by a parent of one of Ms. Drown's students ("Student B"), lodged after Ms. Drown wrote a letter to other parents regarding Student B's behavior in her classroom.

According to the complaint, during the 2012 to 2013 school year, Ms. Drown was employed by Murray City School District (the "School District") as a sixth grade teacher.[6] The complaint also alleges that Ms. Drown had been diagnosed with post-traumatic stress disorder ("PTSD").[7] Ms. Drown alleges that one student in her class, identified by Ms. Drown as "Student 'B,'" "displayed significant and emotional behavioral challenges."[8] According to the complaint, Ms. Drown communicated with her superiors about her concerns related to Student B's behavior.[9] In response, the School District created an Individualized Education Plan for Student B, but directed Ms. Drown not to contact the parents of the students.[10] Nevertheless, "[o]n or about May 13, 2013, Ms. Drown sent a letter home to the parents of all her students, including Student B's parents, stating that she felt that her students were in danger of harm due to

---

[4] *See* docket no. 1.
[5] *See id.* at ¶125.
[6] *See id.* at ¶¶ 7, 15.
[7] *See id.* at ¶ 18.
[8] *Id.* at ¶ 16.
[9] *See id.* at ¶¶ 19–28.
[10] *See id.* at ¶¶ 31, 35; *see also* docket no. 16 at ¶¶ 31, 35.

the unpredictable volatility of one student in the class."[11] The same day, Ms. Drown's employment was suspended, and in July 2013 terminated, by the School District.[12] "On or about May 20, 2013, [the Board] placed a note (commonly referred to as a tag) in Ms. Drown's file in the Computer Aided Credentials of Teachers in Utah System ('CACTUS') . . . ."[13] This tag (sometimes also referred to by the parties as a "flag"), remained in Ms. Drown's file during the Board's investigation into the incident involving the letter Ms. Drown sent to parents.[14]

After appealing her termination, Ms. Drown was reinstated to her prior position in February of 2014, was paid back pay, and "all documentation and reprimands from her [School District] personnel file regarding the incident" were removed.[15] Following its investigation, on January 2, 2015, the Board, acting through the Utah Professional Practices Advisory Commission ("UPPAC") issued a letter of reprimand (the "Letter of Reprimand"), which was placed in her CACTUS file, along with a notation indicating that the Letter of Reprimand had been issued.[16]

Ms. Drown appealed the Board's decision to issue the Letter of Reprimand.[17] Ms. Drown alleges she was first denied her right to a hearing, and was then "informed that if a hearing did take place," a more serious sanction, including suspension of her teaching license, could be imposed.[18] The State Defendants assert that the Letter of Reprimand has been removed from Ms

---

[11] *Id.* at ¶ 41; *see also* docket no. 16 at ¶ 41.
[12] *See id.* at ¶¶ 43–44.
[13] *Id.* at ¶ 47.
[14] *See id.*
[15] *Id.* at ¶ 45; *see also id.* at ¶ 77 ("[A]ll documentation of disciplinary action had been removed from [Ms. Drown's] file.").
[16] *See id.* at ¶¶ 50, 53, 54; *see also* docket no. 10 at ¶¶ 50, 53, 54.
[17] *See id.* at ¶ 55; *see also* docket no. 10 at ¶ 55.
[18] *Id.* at ¶ 55.

Drown's CACTUS file.[19] The complaint makes no allegations against Mr. Rasmussen, either individually, or in his official capacity.[20]

Ms. Drown alleges that the Board discriminated against her on the basis of her disability, and retaliated against her for sending the letter to parents.[21] The complaint brings claims pursuant to 42 USC § 1983; the Americans with Disabilities Act of 1990, 42 USC § 12101 et seq. (the "ADA"); Section 504 of the Rehabilitation Act of 1973, 29 USC § 794 (the "Rehabilitation Act"); and Rule 65B of the Utah Rules of Civil Procedure.

## STANDARD OF REVIEW

At the outset, the court recognizes that Ms. Drown is proceeding pro se.[22] Therefore, the court will "construe [her] pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (citations omitted). However, Ms. Drown's pro se status does not discharge her from complying with the court's rules and procedures, and the court will not assume an advocacy role on Ms. Drown's behalf. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (noting that the Tenth Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants" (quotations and citations omitted)); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").

---

[19] *See* docket no. 10 at ¶ 120.
[20] *See generally* docket no. 1.
[21] *See id*. at ¶ 10.
[22] *See* docket nos. 2, 3.

4

"A motion for judgment on the pleadings is analyzed as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Margae, Inc. v. Clear Link Techs., LLC*, 620 F. Supp. 2d 1284, 1285 (D. Utah 2009). In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court presumes the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. *See Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007). The court is not bound by a complaint's legal conclusions, deductions, and opinions couched as facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007). Further, although reasonable inferences must be drawn in the non-moving party's favor, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Similarly, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, the court may order a party to provide the court a "more definite statement" where a pleading is "so vague or ambiguous" that the responding party "cannot reasonably prepare a response."

## DISCUSSION

The State Defendants argue that the complaint should be dismissed and judgment entered in their favor because the State Defendants are entitled to Eleventh Amendment Immunity; the State Defendants were not Ms. Drown's employer, and therefore are not subject to the ADA or the Rehabilitation Act; Ms. Drown's claims under Title II of the ADA fail as a matter of law with respect to the State Defendants because she was never denied the benefits of the services or

5

programs provided by the Board; and, Ms. Drown's Rule 65B claim for extraordinary relief is improper and untimely. The court will address each of these arguments in turn.

### I. State Defendants Immunity From § 1983 Liability

42 U.S.C. § 1983 provides that, "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws, shall be liable." The Supreme Court has held that "neither the state nor its officials acting in their official capacities are persons under § 1983." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Moreover, the Eleventh "Amendment bars suits seeking monetary, equitable, and injunctive relief against a state or arms of the state." *L.C. v. Utah State Bd. of Educ.*, 188 F. Supp. 2d 1330, 1339 (D. Utah 2002), *appeal dismissed and remanded*, 62 F. App'x 278 (10th Cir. 2003), and *aff'd*, 125 F. App'x 252 (10th Cir. 2005) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1993)).

> Whether a particular political subdivision is an 'arm of the state' is determined by examining four factors: (1) the characterization of the governmental unit under state law; (2) the guidance and control exercised by the state over the governmental unit; (3) the degree of state funding received; and (4) the governmental unit's ability to issue bonds and levy taxes on its own behalf.

*Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1232 (10th Cir. 1999). Applying these factors, this court determined that the Utah State Board of Education is an arm of the state for Eleventh Amendment purposes. *See Coleman v. Utah State Charter Sch. Bd.*, No. 2:10-cv-1186-TC, 2011 WL 4527421, at *3 (D. Utah Sept. 28, 2011) (citing the court's finding in *V.W. v. DaVinci Acad of Sci. & the Arts*, that "the State School Boards . . . are 'arms of the state' entitled to Eleventh Amendment Immunity" where State School Boards included the State Board of

Education and State Charter School Board, (2010 WL 3258326, at *3 (D. Utah Aug. 17, 2010)), and holding the same); *see also L.C.*, 188 F. Supp. 2d at 1339 (D. Utah 2002) ("State agencies are considered an 'an arm of the state for Eleventh Amendment purposes.'. . . [and] [a]s undisputed state agencies, the Utah State Office of Education and the Utah State Board of Education are therefore immune from Plaintiffs' [§ 1983] claims."). Accordingly, the court finds that the Board is entitled to Eleventh Amendment Immunity.

Similarly, state officials acting in their official capacity are also immune from § 1983 claims. Mr. Rasmussen is an employee of the Board. However, Ms. Drown made no specific allegations against Mr. Rasmussen in her complaint, either in his official or personal capacity.[23] Moreover, it would be futile for this court to permit Ms. Drown to amend her complaint to add allegations against Mr. Rasmussen, raised for the first time in her opposition.[24] None of the newly asserted facts support an allegation that the State Defendants have waived immunity, nor do they support her argument of an exception to immunity. Consequently, Mr. Rasmussen is also entitled to Eleventh Amendment immunity, and Ms. Drown's §1983 claims as they relate to him should be dismissed with prejudice.

Ms. Drown argues that an exception to the State Defendant's immunity based on a request for prospective equitable relief applies here, because she is requesting that the Letter of Reprimand be removed. The exception does not apply. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv.*

---

[23] *See generally* docket no. 1.
[24] *See* docket no. 27 at 9–11.

*Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997).

Ms. Drown admits that the flags that had been placed in her electronic record have already been removed from her CACTUS file.[25] The State Defendants assert that the Letter of Reprimand has also been removed, and therefore her request for it to be removed is not prospective. However, even if it had not been removed, her request that it be removed cannot save Ms. Drown's complaint from dismissal. Ms. Drown does not have a constitutionally protected right to a "discipline free teacher-licensing file."[26] The presence of the Letter of Reprimand in CACTUS file does not represent "an ongoing violation of federal law." Even if her request for equitable relief did overcome the Board's Eleventh Amendment Immunity, it does not constitute a claim for relief upon which relief can be granted, as discussed in more detail below.

## II.     ADA and Rehabilitation Act Claims

The complaint brings claims for discrimination under the ADA and Rehabilitation Act. "The ADA has three separate titles: Title I covers employment discrimination, Title II covers discrimination by government entities, and Title III covers discrimination by places of public accommodation." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 691–92 (2001). Ms. Drown's claims fall under Title I and Title II.

The ADA defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 12111. Title I only protects employees of an employer from employment discrimination. *See*

---

[25] *See* docket no. 27 at 5–6.
[26] Docket no. 27 at 5.

*PGA Tour, Inc.*, 532 U.S. at 692. According to the complaint, "[a]t all times relevant to this case, Plaintiff . . . was employed by Murray City School District."[27] Ms. Drown does not claim to have been employed by either the Board or Mr. Rassmussen.[28] Accordingly, Ms. Drown's claims against the State Defendants under Title I of the ADA fail as a matter of law.

Title II of the ADA provides that "no qualified individual shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 1232. Similarly, Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 USC § 794.

The State Defendants argue that because Ms. Drown was never denied a teaching license, she was not excluded from participation in or denied the benefits of the services, programs, or activities of the Board.[29] The court agrees with the State Defendants that, indeed, investigating complaints, flagging records involved in investigations, and taking disciplinary actions as necessary, are all part of the programs and activities of the Board. Ms. Drown was not deprived

---

[27] Docket no. 1 at ¶ 5; *see also id.* at ¶ 7 ("Murray City School District . . . was Ms. Drown's employer at all times relevant in this case.").

[28] The court notes that in her memorandum in opposition to the State Defendants' reply in support of the Motion, Ms. Drown alleges for the first time that she "did some stipend work for State Defendants during the past ten years" and argues that this entitles her to bring an action against the State Defendants pursuant to Title I of the ADA. (Docket no. 31 at 2.) While the court need not consider this filing, as the Federal Rule of Civil Procedure do not contemplate a reply to a reply memorandum, out of an abundance of caution, the court will briefly address this additional argument. Even if the "stipend work" Ms. Drown describes made her an employee of the State Defendants, permitting her to amend the complaint to add this allegation would be futile. None of the alleged discriminatory actions were related to that employment.

[29] *See* docket no. 15 at 5.

of participation in these programs and activities. Nor has she alleged that she was treated differently than other teachers who were the subject of complaints. Instead, Ms. Drown argues that she was "deprived of an untarnished or undamaged or discipline free teacher-licensing file."[30] Again, Ms. Drown does not have a constitutionally protected right to a discipline-free file, and such an argument does not support a claim of discrimination under either the ADA or the Rehabilitation Act. Accordingly, the court recommends that these claims against the State Defendants be dismissed with prejudice.

### III. Utah R. Civ. P. 65 B Claim

Ms. Drown seeks relief for the Board's actions, acting through UPPAC, related to the investigation and decision to issue the Letter of Reprimand.[31] Ms. Drown alleges that she is entitled to extraordinary relief specifically under Rule 65B(d)(2)(A), because "UPPAC abused its discretion, and acted arbitrarily and capriciously."[32]

Utah Rules of Civil Procedure Rule 65B states that,

> Where no other plain, speedy and adequate remedy is available, a person may petition the court for extraordinary relief on any of the grounds set forth in paragraph (b) . . . , paragraph (c) . . . or paragraph (d) (involving the wrongful use of judicial authority, the failure to exercise such authority, and actions by the Board of Pardons and Parole).

Utah R. Civ. P. 65B(a). Rule 65B(d) provides, in relevant part, that, "[a]ppropriate relief may be granted: (A) where an inferior court, administrative agency, or officer exercising judicial functions has exceeded its jurisdiction or abused its discretion[.]" Utah R. Civ. P. 65B(d)(2)(A).

---

[30] Docket no. 27 at 5.
[31] *See* docket no. 1 at ¶ 104; docket no. 27 at 12.
[32] *Id.* at ¶ 103.

The court need not reach the merits of Ms. Drown's stated grounds for extraordinary relief, because she has not met her initial burden of "demonstrat[ing] that the ordinary judicial process [does] not provide [her] with a plain, speedy, and adequate remedy." *Gilbert v. Maughan*, 2016 UT 31, ¶ 21, 379 P.3d 1263; *see also* Utah R. Civ. P. 65B(a). Appeal from administrative decisions is available through the Utah Administrative Procedures Act, by filing an appeal in the Utah District Court within thirty (30) days after the final administrative action. *See* Utah Code § 63G-4-401 and 402. Ms. Drown did not file an appeal within the thirty days provided by the Administrative Procedures Act. Instead, she waited nearly two years after the Letter of Reprimand was placed in her file, and nearly three years after she was reinstated to her teaching position, to file this action. Ms. Drown has not made any attempt to explain why the ordinary judicial process available to her was inadequate. Accordingly, Ms. Drown's claim for relief under Rule 65B of the Utah Rules of Civil Procedure should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that the State Defendants' Motion for Judgment on the Pleadings and Motion to Dismiss[33] be **GRANTED**, and that Ms. Drown's claims against the State Defendants be dismissed with prejudice.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after being

---

[33] *See* docket no. 15.

served with a copy of it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 20th day of February, 2018.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge