**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| **DONNA DROWN, an individual,** <br><br> Plaintiff, <br><br> v. <br><br> **UTAH STATE OFFICE OF EDUCATION, BENJAMIN RASMUSSEN, MURRAY CITY SCHOOL DISTRICT, and STEVEN HIRASE,** <br><br> Defendants. | **REPORT AND RECOMMENDATION** <br><br> **Case No. 2:16-cv-01273-DB-PMW** <br><br> **District Judge Dee Benson** <br><br> **Chief Magistrate Judge Paul M. Warner** |

District Judge Dee Benson referred this case to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Before the court is Defendants the Murray City School District's (the "School District") and Dr. Steven Hirase's ("Dr. Hirase") (collectively, the "School District Defendants") Motion for Judgment on the Pleadings and Motion to Dismiss (the "Motion").[2] The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the Motion on the basis of the written memoranda. *See* DUCivR 7-1(f).

---

[1] *See* docket no. 24.
[2] *See* docket no. 19.

1

## BACKGROUND

On December 21, 2016, Plaintiff Donna Drown ("Ms. Drown") filed the above-captioned lawsuit.[3] The action arises out of allegations that the School District Defendants discriminated against Ms. Drown on the basis of her disability, and deprived her of her liberty and property interests without due process.

According to the complaint, during the 2012 to 2013 school year, Ms. Drown was employed by the School District as a sixth grade teacher.[4] The complaint also alleges that Ms. Drown had been diagnosed with post-traumatic stress disorder ("PTSD").[5] Ms. Drown alleges that one student in her class, identified by Ms. Drown as "Student 'B,'" "displayed significant and emotional behavioral challenges."[6] According to the complaint, Ms. Drown communicated with her superiors about her concerns related to Student B's behavior.[7] In response, the School District created an Individualized Education Plan for Student B, but directed Ms. Drown not to contact the parents of the students.[8]  Nevertheless, "[o]n or about May 13, 2013, Ms. Drown sent a letter home to the parents of all her students, including Student B's parents, stating that she felt that her students were in danger of harm due to the unpredictable volatility of one student in the class."[9] The same day, Ms. Drown's employment was suspended, and in July 2013 terminated, by the School District.[10]

---

[3] *See* docket no. 1.
[4] *See id*. at ¶¶ 7, 15.
[5] *See id.* at ¶ 18.
[6] *Id*. at ¶ 16.
[7] *See id.* at ¶¶ 19–28.
[8] *See id.* at ¶¶ 31, 35; *see also* docket no. 16 at ¶¶ 31, 35.
[9] *Id.*  at ¶ 41; *see also* docket no. 16 at ¶ 41.
[10] *See id.* at ¶¶ 43–44.

Following a complaint lodged with the Utah State Board of Education (the "Board") by Student B's parents, the Board initiated an investigation.[11] "On or about May 20, 2013, [the Board] placed a note (commonly referred to as a tag) in Ms. Drown's file in the Computer Aided Credentials of Teachers in Utah System ('CACTUS') . . . ."[12] This tag (sometimes also referred to by the parties as a "flag"), remained in Ms. Drown's CACTUS file during the Board's investigation into the incident involving the letter Ms. Drown sent to parents.[13]

After appealing her termination, Ms. Drown was reinstated to her prior position in February of 2014, was paid back pay, and "all documentation and reprimands from her [School District] personnel file regarding the incident" were removed.[14] On January 2, 2015, the Board, acting through the Utah Professional Practices Advisory Commission ("UPPAC") issued a letter of reprimand (the "Letter of Reprimand"), which was placed in Ms. Drown's CACTUS file, along with a notation indicating that the Letter of Reprimand had been issued.[15]

The School District informed the Board and UPPAC that Ms. Drown had been reinstated by letter dated September 29, 2014.[16] However, Ms. Drown alleges that the School District Defendants failed to inform the Board and UPPAC that after she had been reinstated, had been paid back wages and been reimbursed for other benefits, and that all documentation of disciplinary action had been removed from her School District file.[17]

---

[11] *See id*. at ¶ 125.
[12] *Id.* at ¶ 47.
[13] *See id*.
[14] *Id.* at ¶ 45; *see also id*. at ¶ 77 ("[A]ll documentation of disciplinary action had been removed from [Ms. Drown's] file.").
[15] *See id.* at ¶¶ 50, 53, 54; *see also* docket no. 10 at ¶¶ 50, 53, 54.
[16] *See* docket no. 16 at ¶ 51; attachment 2 to docket no. 16.
[17] *See* docket no. 1 at ¶¶ 75-77.

Ms. Drown alleges that by failing to communicate additional information regarding her reinstatement, the School District refused to accommodate her disability.[18] Ms. Drown also alleges that the School District "acted in an arbitrary and capricious manner in refusing to address the situation with Student B and the impact it had on her disability" as well as in "fail[ing] to inform [the Board] of the entire situation."[19] The complaint makes no allegations against Dr. Hirase, either individually, or in his official capacity.[20]

On July 1, 2015, Ms. Drown filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which issued her a Notice of Right to Sue on or about September 22, 2016.[21]

Ms. Drown brings claims against the School District Defendants for disability discrimination for failure to provide reasonable accommodations under to the Americans with Disabilities Act of 1990, 42 USC §12101 *et seq.* (the "ADA"), 42 USC § 1983, and Section 504 of the Rehabilitation Act of 1973, 29 USC § 794 (the "Rehabilitation Act") (first and second claims for relief); and deprivation of her liberty interests without due process pursuant to 42 USC § 1983 (fifth claim for relief). For the reasons set forth below, this court recommends that the Motion should be granted.

## STANDARD OF REVIEW

At the outset, the court recognizes that Ms. Drown is proceeding pro se.[22] Therefore, the court will "construe [her] pleadings liberally and hold the pleadings to a less stringent standard

---

[18] *See id.*
[19] *Id.* at 115.
[20] *See generally* docket no. 1.
[21] *See id.* at ¶¶ 10–11.
[22] *See* docket nos. 2, 3.

than formal pleadings drafted by lawyers." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (citations omitted). However, Ms. Drown's pro se status does not discharge her from complying with the court's rules and procedures, and the court will not assume an advocacy role on Ms. Drown's behalf. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (noting that the Tenth Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants" (quotations and citations omitted)); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").

"A motion for judgment on the pleadings is analyzed as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Margae, Inc. v. Clear Link Techs., LLC*, 620 F. Supp. 2d 1284, 1285 (D. Utah 2009). In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court presumes the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. *See Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007). The court is not bound by a complaint's legal conclusions, deductions, and opinions couched as facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007). Further, although reasonable inferences must be drawn in the non-moving party's favor, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Similarly, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, the court may order a party to provide the court a "more definite statement" where a pleading is "so vague or ambiguous" that the responding party "cannot reasonably prepare a response."

## DISCUSSION

The School District Defendants argue that the complaint should be dismissed and judgment entered in their favor on the following grounds. First, that Ms. Drown's ADA claims are brought outside the 300-day deadline. Second, that Ms. Drown's pleadings fail to state a claim upon which relief can be granted. Third, that 42 USC § 1983 is preempted by the ADA and Rehabilitation Act. And, finally, that no allegations have been made against Dr. Hirase in his individual or official capacity.

### I. Ms. Drown's ADA Claims are Untimely

Ms. Drown was required to file her ADA claims within 300 days of the challenged actions of the School District Defendants. "Incorporating the procedural rules of Title VII, the ADA requires an individual to file a timely administrative claim within 300 days of the challenged action." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003).

Ms. Drown did not file a Charge of Discrimination with the EEOC until July 1, 2015. Consequently, any discriminatory actions alleged to have occurred prior to September 4, 2014 (300 days before July 1, 2015) cannot support her ADA claims. Ms. Drown was reinstated to her teaching position in February of 2014.[23] Thus, none of the events which occurred prior to Ms. Drown's reinstatement can support her ADA claims, including all events involving Student B, Ms. Drown's suspension, and her termination.

---

[23] *See* docket no. 1 at ¶ 45.

Ms. Drown's argument that the deadline should be tolled because she did not know of the harm caused by the School District Defendant's alleged discriminatory actions until the Board issued her the Letter of Reprimand is unpersuasive. The Board's investigation and ultimate decision were taken independent of the actions of the School District Defendants. Moreover, even if the Board's decision to issue the Letter of Reprimand constituted discrimination, the School District Defendants do not have a duty to "mitigate the discrimination" of another entity, as Ms. Drown argues.[24]

For these reasons, Ms. Drown's untimely ADA claims in her first and second claim for relief as to the School District Defendants should be dismissed with prejudice.

## II.    Ms. Drown's ADA and Rehabilitation Act Claims Based on Failure to Communicate with the Board

The only allegation of events supporting Ms. Drown's ADA claims which took place within the 300-day time period allotted for filing a claim is the School District's failure to communicate certain information to the Board. Ms. Drown alleges that this failure constitutes a failure to provide reasonable accommodations in violation of the ADA and the Rehabilitation Act.[25]

The ADA prohibits "discriminati[on] against a qualified individual on the basis of disability." 42 USC § 12112(a). Such prohibited discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee[.]" 42 USC § 12112(b)(5)(A).

---

[24] Docket no. 28 at 4.
[25] *See* docket no. 1 at ¶¶ 75–77.

7

"The term reasonable accommodation means . . . [m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position[.]" 29 C.F.R. § 1630.2. The corollary is that an accommodation "is not reasonable on its face if it would not enable the employee to perform the essential function at issue." *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1267 (10th Cir. 2015).

The School District Defendants argue that Ms. Drown fails to state a claim upon which relief can be granted, "because communicating information to a third part[y] is not an accommodation necessary to allow Plaintiff to perform the duties of her positon[.]"[26] Ms. Drown clarifies in her opposition to the Motion that her allegation is that the School District Defendants "failed to mitigate discrimination committed by the School [District] Defendants . . . when [they] failed to notify State defendants of the full circumstances of [her] reinstatement."[27] Ms. Drown also makes a new allegation that the School District Defendants refused her request to include in their letter a statement that there was not sufficient evidence that Ms. Drown was insubordinate.[28]

Ms. Drown does not allege, either in the complaint or in her opposition to the Motion, that she could not perform the essential functions of her position. Ms. Drown speculates that the Letter of Reprimand would not have been issued if the School District Defendants had informed the Board of all the additional information she alleges they should have. However, even if this is

---

[26] Docket no. 19 at 4.
[27] Docket no. 28 at 4.
[28] *See id*.

8

true, it does not amount to a failure to provide a reasonable accommodation. Similarly, the School District Defendants' refusal to include a statement that there was insufficient evidence of Ms. Drown's insubordination is not a failure to provide a reasonable accommodation. It is clear to the court that the issuance of the Letter of Reprimand did not prevent Ms. Drown from performing the essential functions of her position. As the School District Defendants point out, Ms. Drown "was able to perform all essential functions of her teaching position between February 2014" when she was reinstated, and June 2016 when she voluntarily resigned.[29] Therefore, it would be futile to allow Ms. Drown to amend her complaint to add the new allegation.

For these reasons the court concludes that Ms. Drown's ADA claims based on the School Defendants' alleged failure to accommodate fail to state a claim upon which relief can be granted, and should be dismissed with prejudice.

Moreover, because the language and non-discrimination principles of the ADA and Rehabilitation Act are "substantially similar . . . claims under both acts are generally analyzed together." *Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cty., Okla.*, 960 F. Supp. 2d 1254, 1265 (N.D. Okla. 2013) (citing *Cohon ex rel. Bass v. New \*1266 Mexico Dep't of Health,* 646 F.3d 717, 725–26 (10th Cir. 2011)). Accordingly, for the same reasons outlined above, Ms. Drown's Rehabilitation Act claims based on failure to accommodate fail to state a claim upon which relief can be granted, and should also be dismissed with prejudice.

---

[29] Docket no. 19 at 4.

### III. Claim for Deprivation of Liberty and Property Interests

Ms. Drown's fifth claim for relief is a claim for alleged deprivation of her liberty and property interests without due process. Ms. Drown's claim against the School District Defendants is based on Ms. Drown's allegation that the School District "acted in an arbitrary and capricious manner in refusing to address the situation with Student B and the impact that it had on Ms. Drown's disability, and failed to inform [the Board] of the entire situation, and the removal of discipline from her personnel file."[30] Liberally construing Ms. Drown's complaint, the court interprets this allegation as alleging the School District infringed on her liberty interest in her good name and reputation as it relates to her property interest in employment opportunities.

"A public employee enjoys two interests protected under the liberty prong of the fourteenth amendment's due process clause: (1) an interest in his good name, reputation, honor and integrity, and (2) an interest in other employment opportunities." *Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989). To show deprivation of this liberty interest, Ms. Drown must show that the School District Defendants' "action stigmatized or otherwise damaged [her] reputation[.]" *Id.* She must also "show that [her] reputation was damaged 'in connection with [an] adverse action taken against'" her. *Stidham v. Peace Officer Standards And Training*, 265 F.3d 1144, 1153 (10th Cir. 2001) (second alteration in original) (quoting *Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989)). "'[D]efamation, standing alone,'" is insufficient. *Id.* (quoting *Renaud v. Wyom. Dep't of Family Servs.*, 203 F.3d 723, 726–27 (10th Cir.2000). The Tenth Circuit has established a "four-part test for whether statements infringe on a liberty interest

---

[30] Docket no. 1 at ¶ 115.

in one's good name as it affects one's property interest." *Id*. (alterations, quotations, and citations omitted).

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee *or must foreclose other employment opportunities.* And fourth, the statements must be published.

*Id.* (emphasis in original) (citation omitted).

Ms. Drown's claim fails this test. First, Ms. Drown has not alleged in the complaint that the School District Defendants made or published any false statements. More importantly, Ms. Drown does not allege that any false statements were made in the course of her *termination*. The additional allegations of false statements related to this claim for relief, asserted for the first time in her opposition to the Motion, are also not alleged to have occurred in the course of her termination.[31] Therefore, it would be futile to permit Ms. Drown to amend her complaint to add the additional alleged false statements.

Nor does Ms. Drown allege that any alleged false statements foreclosed other employment opportunities. Ms. Drown does argue that if the School District had communicated everything to the Board that she wanted them to, the Letter of Reprimand would not have placed in her CACTUS file, the presence of which caused her to be passed over for other positions.[32] However, the failure to communicate certain desired information is not the publication of false statements, as required by the four-part test. Moreover, the Letter of Reprimand was issued by the Board. Therefore, even if its presence in her CACTUS file did foreclose employment opportunities, it cannot support a claim against the School District Defendants.

---

[31] *See* docket no. 28 at 6–7.
[32] *See id*.

Ms. Drown also argues that she was deprived of a property interest in "a discipline free teacher-licensing file."[33] Ms. Drown does not have a constitutionally protected right to a discipline-free teacher-licensing file. However, even if she did, this claim against the School District Defendants fails for two reasons. First, the School District Defendants do not maintain teacher licenses or licensing files. Second, if by "teacher-licensing file" Ms. Drown meant her teacher record, the School District "removed all documentation and reprimands from her personnel file regarding the incident."[34]

For these reasons, the court concludes that Ms. Drown's fifth claim for relief for deprivation of liberty and property interests against the School District Defendants should be dismissed.

### IV. Ms. Drown's § 1983 Claims for Violations of the ADA and Rehabilitation Act

Ms. Drown's first and second claims for relief combine claims brought under 42 USC § 1983 with her ADA and Rehabilitation Act claims. She has alleged no independent bases for her § 1983 claims. The School District Defendants argue that her § 1983 claims are preempted by the ADA and Rehabilitation Act because they each provide express, private means of redress. *See Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981) ("[W]hen a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983") (quotations and citations omitted). At least one court in the Tenth Circuit has "agree[d] with the circuits that have addressed this issue and [held] that Plaintiffs cannot sue under § 1983 for violations of the ADA or Rehabilitation Act." *Stevenson v.*

---

[33] Docket no. 28 at 7.
[34] Docket no. 1 at ¶ 45.

*Indep. Sch. Dist. No. I-038 of Garvin Cty., Oklahoma*, 393 F. Supp. 2d 1148, 1152 (W.D. Okla. 2005) (footnote omitted).

This court need not reach the preemption issue in this case. The court has already concluded that Ms. Drown's ADA and Rehabilitation Act claims fail to state a claim upon which relief can be granted. Accordingly, her § 1983 claims based on violations of the ADA and Rehabilitation Act should be dismissed.

### V.     Claims Against Dr. Hirase

Finally, the complaint brings no specific allegations against Dr. Hirase, the School District Superintendent, either in his individual or official capacity, separate from the allegations against the School District. Dr. Hirase is identified by name or title only handful of times in the complaint, in which Ms. Drown states she sent an email and continued reports to him, among others, "outlining the safety issues and causes for concern" related to Student B. [35]  In her opposition to the Motion, Ms. Drown further alleges that Dr. Hirase "refused to provide adequate accommodations to" her;[36] refused to repay her $10 in a parks and recreation membership discount she did not receive during her termination;[37] and did not "notify the [Board] of the full circumstances of [her] reinstatement even though [Ms. Drown] requested this of [him] on at least two different occasions."[38] These new allegations against Dr. Hirase individually provide no additional basis for claims against him. As the Superintendent of the School District, Dr. Hirase

---

[35] Docket no. 1 at ¶¶ 19.a., 32, 34. In addition, Ms. Drown alleges that the Letter of Reprimand states that she "failed to follow a Superintendent's directive, which instructed her not to notify parents of possible danger to their student, while never once telling Ms. Drown what she could do instead to keep students safe." Docket no. 1 at ¶ 50.
[36] Docket no. 28 at 8.
[37] *See* docket no. 28 at 3.
[38] Docket no. 28 at 4.

13

is entitled to all the same defenses as the School District. Accordingly, for all the reasons set forth in Sections I through IV above, the claims against Dr. Hirase should be dismissed.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that the School District Defendants' Motion for Judgment on the Pleadings and Motion to Dismiss[39] be **GRANTED**, and that Ms. Drown's claims against the School District Defendants be dismissed with prejudice.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy of it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 20th day of February, 2018.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge

---

[39] *See* docket no. 19.